# EXHIBIT B

Charles M Louderback, Esq. (State Bar #88788)
28 Oak Grove Dr,
Novato, CA 94949-7219
Telephone: (415) 933-0000
clouderback@louderbackgroup.com

Attorney for plaintiff, JEFFERY J. DEVASHRAYEE

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**05/04/2022**
**Clerk of the Court**
**BY: JEFFREY FLORES**
**Deputy Clerk**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JEFFERY J. DEVASHRAYEE<br><br>Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, and DOES 1 through 100, inclusive,<br><br>Defendants. | **Case No.:**      **CGC-22-599500**<br>**COMPLAINT FOR DAMAGES (AMOUNT DEMANDED EXCEEDS $25,000.00)**<br><br>1. **AGE DISCRIMINATION;**<br>2. **FAILURE TO PREVENT AGE DISCRIMINATION;**<br>3. **RACE DISCRIMINATION;**<br>4. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Jeffery J. Devashrayee, hereby alleges against defendants, Union Pacific Railroad Company ("Union Pacific") and Does 1 through 100 inclusive as follows:

**PARTIES**

1. Plaintiff, Jeffery J. Devashrayee, was an employee of twenty-three (23) years with Union Pacific. Union Pacific is a large national corporation which has offices throughout the United States. Plaintiff worked in a number of offices owned by Union Pacific during his employment there.

2. The true names, identities, or capacities, whether individual, corporate, associate or otherwise of defendants, those one through 100, inclusive, are unknown to Plaintiff who, therefor, sues said defendants by such fictitious names. When its true names, identities, or

COMPLAINT FOR DAMAGES (AMOUNT DEMANDED EXCEEDS $25,000.00)

capacities of such fictitiously designated defendants are ascertained, Plaintiff will ask leave of this

Court to amend the Complaint to insert said true names, identities, and capacities together with the

proper charging allegations.

3.      Plaintiff is informed and believes, and thereon alleges, that each of the defendants

sued herein as Does 1 through 100 are responsible in some manner and liable herein for negligent,

wanton, reckless, tortious conduct, and strict liability; and by such wrongful conduct, proximately

caused the plaintiffs injuries and damages

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over the defendants because they are residents

of, have contact with, and are doing business in the state of California.

5.      Venue is proper in this county and judicial district in accordance with CCP sections

394 and 395 because some or all of the defendants do business in this judicial district, and Plaintiff

and others employed by defendants did business and had substantial contact in this county and

judicial District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      Plaintiff filed timely charges of age and race harassment and discrimination with

the Department of Fair Employment and Housing against defendants and related parents and

subsidiaries.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7.      Plaintiff is a 59-year-old Indian American who, by any objective measure, enjoyed

a stellar twenty-three (23) year career with Union Pacific. Plaintiff joined Union Pacific on

November 2, 1998, as a General Attorney and instantly distinguish himself as a top performer and

future leader at Union Pacific. On the key measures of how attorneys performed at Union Pacific

and outside of Union Pacific, he had an outstanding record. He tried and won cases, won

numerous motions for summary judgment, negotiated numerous settlements, resolved countless

legal issues as they would arise and became proficient as an expert in several areas of railroad law.

8.     Early in his career, Plaintiff became a go-to resource for Union Pacific employees

seeking legal advice. He served as the Director of the Center of Excellence for rough-riding

locomotives. He helped form defense strategy for these difficult to defend cases and secured

substantial recoveries from locomotive manufactures. He earned the trust and respect of his fellow

employees and peers lasting throughout his Union Pacific career.

9.     In 2007, Plaintiff was promoted to General Director Ethics and Compliance and

reported directly to the Vice President Law and Chief Compliance Officer. Plaintiff served in that

position for four years with distinction and received high praise for his excellent work.

10.     Plaintiff led the Salt Lake City law office with distinction for seven years, from

2009 to 2016. The office was comprised of four attorneys, including Plaintiff, two paralegals, one

legal secretary, one administrative aide and one file clerk. The office performed in an outstanding

fashion, and Plaintiff was praised for his leadership of the Salt Lake City law office.

11.     While leading the Salt Lake City office, Plaintiff managed the in-house attorneys in

that office, who covered Utah, Idaho and later Nevada, as well as outside counsel in Utah, Idaho,

Nevada, Montana, Idaho, Arizona, New Mexico, Eastern Washington, Western Wyoming and

West Texas (El Paso).  Plaintiff established and monitored budgets, formulated litigation and trial

strategy and conducted regular case reviews.  Under Plaintiff's leadership, his teams won trials

and dispositive motions and negotiated numerous favorable settlements.

12.     Plaintiff performed these leadership duties while also serving as General Director

of Ethics and Compliance and then as Senior Trial Counsel, both D bands one level below

executive status, and the same band level as a Senior Counsel.  The duties that Plaintiff performed

were those typically performed by a General Solicitor, an executive

position. Plaintiff's performance duties and goals reflected those of a General Solicitor.

13. Plaintiff's outstanding work led him to receive additional significant responsibilities. For instance, while leading the Salt Lake City law office, Plaintiff led the extremely important service unit attorney program in its early stages. Plaintiff received high praise for his leadership and to this day remains as one of the best service unit attorneys at Union Pacific. Plaintiff successfully testified on behalf of Union Pacific numerous times before the Utah legislature. Plaintiff was asked to take over leadership of the contract van claims handling process and completely transformed that process. He eventually took over leadership and management of all third party tendered cases for the entire system and saved Union Pacific tens of millions of dollars in settlement payments and attorneys fees and costs.

14. In 2016, Plaintiff was named a director of the Crossing Assessment Process ("CAP"), Union Pacific's railroad crossing safety program at the time. Plaintiff received high praise for his work from Union Pacific's Executive Vice President of Operations and others. He received a rating of "Exceeding Expectations" from his supervisor due, in large part, for his leadership of CAP.

15. Notwithstanding Plaintiff's outstanding performance of executive-level work while leading and managing the Salt Lake City law office and also while serving as a director of CAP, Plaintiff was never promoted to an executive-level position and was passed over for promotion to executive status in favor of others not of his race or ethnicity and with lesser qualifications.

16. In recent history, Union Pacific has shown a proclivity to mistreating older employees and denying them their rights. In the summer of 2017, Union Pacific announced a buyout available to employees who turned fifty-five (55) years of age by September. Many attorneys in the Law Department took the buyout. Plaintiff turned fifty-five (55) in November and, therefore, did not qualify for the buyout. Those who qualified for the buyout but did not take it for whatever reason were treated harshly and discriminated against by the Law Department.

COMPLAINT FOR DAMAGES (AMOUNT DEMANDED EXCEEDS $25,000.00)

17.     Plaintiff was soon to experience this illegal discriminatory behavior by Union Pacific. In October 2020, Leonard Sherer and Benton Bond, two executives at Union Pacific to whom Plaintiff reported, asked Plaintiff to come into Mr. Sherer's office in Omaha, Nebraska. Plaintiff at this time was serving as a member of the labor and employment team.  Mr. Sherer told Plaintiff that a Senior Counsel position in Omaha needed to be eliminated and that Plaintiff would be the casualty. No reason or explanation was given as to why Plaintiff was selected. Plaintiff was stunned given his undisputed record of success and his innumerable, substantial contributions to the company throughout his outstanding career. Just recently, he had finished trying his fourth case, which he eventually won like his previous three cases.

18.     Plaintiff was nearly fifty-eight (58) years eight years old when this October 2020 meeting occurred and one of the oldest attorneys in the Law Department.  As later emphasized by Mr. Bond to Plaintiff more than once, Plaintiff was the highest paid Senior Counsel in the Law Department.

19.     Mr. Sherer told Plaintiff during the October 2020 meeting that he could keep his job only if he relocated to California to help set up a new law office in Roseville. Mr. Sherer told Plaintiff that if he chose not to relocate in California, Union Pacific's California cases would be handled by outside counsel. If he chose to relocate, he was told that he could lead the new Roseville office and that it would consist of three attorneys, including himself, and three paralegals.  The two other attorneys were to be experienced trial attorneys that could take cases immediately. By this time, two of Plaintiff's four children had relocated to the Midwest, and all of his grandchildren lived there. Nevertheless, to keep his job and not be fired, Plaintiff agreed to move to Roseville.

20.     It soon became clear that Mr. Sherer and Mr. Bond intended for Plaintiff to fail in leading the Roseville office and to ultimately achieve the Law Department's desire to eliminate another Senior Counsel. Before Plaintiff had even left for California, Mr. Sherer informed him that

COMPLAINT FOR DAMAGES (AMOUNT DEMANDED EXCEEDS $25,000.00)

instead of having three attorneys and three paralegals in the office, there would only be two attorneys and two paralegals. Plaintiff was expected to carry his own caseload as well as manage two law firms and their cases. He was expected to manage the new attorney who would be joining him in Roseville and to train that attorney and review the attorney's work product. In addition, he was expected to do those things without a legal secretary in arguably the most difficult venue of the entire Union Pacific system.

21.    Plaintiff moved to Roseville in early January 2021 and fully dedicated himself to successfully leading the Roseville law office like he did the Salt Lake law office. During the month of January and February, the Law Department allowed its employees to work from home because of the unrelenting COVID-19 outbreak but required its employees to come into the office at least every Tuesday. Plaintiff trusted and gave free reign to the new attorney who had been hired in the Roseville law office, Stacey Roberts, to work the hours that best fit her schedule, just as long as the work got done.  In comparison, Plaintiff came into the office every day to review case files and get the office up and running. He regularly worked extra-long hours and weekends. He sacrificed family and personal life for the sake of the success of the Roseville law office.

22.    Although Plaintiff was told that a Senior Counsel position needed to be eliminated in Omaha, a much younger Caucasian female was made a Senior Counsel about one year after Plaintiff had moved to California. She and Plaintiff were members of the labor and employment team when Plaintiff relocated to California. Also contrary to Mr. Sherer's representation, a much younger attorney on the commercial litigation team in Omaha, a Caucasian male, was promoted to Senior Counsel after Plaintiff had moved to California.

23.    Although Plaintiff was told that he needed to relocate to California to save his job, no other Law Department employee in Omaha or elsewhere was told to relocate to save their jobs. Mr. Bond was allowed to work from his hometown in Houston rather than relocate to Omaha. Two other Senior Counsel were afforded great latitude to work remotely.  One was

allowed to work from his hometown in Pittsburgh. The other was allowed to work from home both in Omaha and Denver. An attorney in the Chicago office was allowed to work from home in New York. Amanda Luque, a paralegal and member of the Roseville office, was allowed to work from her hometown in Los Angeles rather relocate in Roseville. Upon information and belief, all of these Law Department employees were younger and had less years of service with Union Pacific than Plaintiff.

24. In contrast, Plaintiff was told that he could not work from home an extra week during COVID-19 even though others were allowed to work from home full-time. The aforementioned attorneys in Pittsburgh, Denver and New York, and Ms. Luque in Los Angeles, all were allowed to work from home.

25. Plaintiff was told when he moved to California that he would have three attorneys and three paralegals in the office. This never happened. Ms. Luque was supposed to be in Roseville every other week. She was rarely in Roseville. Plaintiff was ignored by Craig Richardson, Chief Legal Officer, Mr. Sherer and Mr. Bond while in California and did not receive the support that he needed and was promised when he moved to California.

26. Plaintiff is the only Indian-American attorney in the Law Department and has been the only Indian-American attorney for the vast majority of his career at Union Pacific. He is one of only two Asian-American Attorneys. On one occasion, during a meeting with Mr. Bond in Omaha, Plaintiff's race and ethnicity was made light of and even mocked. Plaintiff's race and ethnicity brought diversity to the Roseville law office, but that meant nothing to Mr. Bond and the Law Department.

27. In September 2021, Mr. Bond met with Plaintiff in Omaha. Ms. Roberts had left Union Pacific three months earlier. Mr. Bond relieved Plaintiff of his leadership responsibilities in the Roseville law office and told him that his "How" needed improvement allegedly based on interviews with Ms. Roberts and Ms. Luque without giving Plaintiff an opportunity to

7

respond. The reasons given by Mr. Bond for these actions and accusations were fraudulent, untrue and highly disingenuous.

28. Ms. Roberts had been with Union Pacific for five months. Plaintiff had worked for Union Pacific for almost twenty-three (23) years and had successfully led a law office previously for seven years. Many attorneys and other Law Department employees have left Union Pacific in recent years. The supervisors of these attorneys and employees were likely given the opportunity to respond to the undoubtedly negative feedback that was given. These supervisors also were likely given the benefit of the doubt and not tainted by the feedback.

29. In January 2022, plaintiff received an email message from Mr. Bond setting forth his year-end performance review. Like the reasons given by Mr. Bond in his September 2021 meeting with Plaintiff, the review is fraudulent and filled with lies, hypocrisies and non-issues. The review states, among other things, that Plaintiff was not working at the level of a Senior Counsel and that he had not been working at that level for several years.

30. At no time had anyone told Plaintiff at any time during his distinguished career until then that he was not working at the level of a Senior Counsel, let alone for several years. Nowhere in his previous performance reviews does it state that he was not working at the level of a Senior Counsel. Plaintiff had received extensive praise from his supervisors and others throughout his entire career at Union Pacific. That praise is reflected in his performance reviews up through 2020. Plaintiff rarely received feedback during his career that could even be considered critical. Mr. Bond's outrageous comments and fraudulent statements that he had not been working at the level of a Senior Counsel for several years is an outright fabrication, contrary to the overwhelming evidence and concrete evidence of Union Pacific's pretext to force Plaintiff from the company.

31. In spite of the numerous handicaps and obstacles faced by Plaintiff in California, Plaintiff, and the Roseville law office in general, achieved excellent results during the year 2021. Notwithstanding these undisputedly excellent results, Plaintiff was punished by receiving a

fraudulent performance review and an insulting, offensive compensation package. Plaintiff's results compared favorably to other Senior Counsel in the Law Department, yet it is likely that they were given much better performance reviews and compensation packages.

32.     As a result of the fraudulent, discriminatory, humiliating, duplicitous conduct duplicitous and oppressive conduct of Union Pacific, plaintive was constructively discharged when Union Pacific create such a hostile work environment that no reasonable person would have remained in this toxic environment. Plaintiff was constructively discharged from his employment in February 2022 because of this work environment as set forth above."

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S FAIR EMPLOYMENT AND HOUSING ACT: AGE DISCRIMINATION AGAINST DEFENDANT UNION PACIFIC AND DOES 1 THROUGH 100.

33.     As a first, separate and distinct cause of action, Plaintiff complains against defendant Union Pacific and Does 1 through 100 inclusive and realleges all the allegations contained in the complaint and incorporates them by reference into this cause of action as a fully set forth herein.

34.     Defendant Union Pacific is a covered employer under California's fair employment and housing act. Plaintiff was a covered employee under the age discrimination provisions of the fair employment and housing act being 59 years of age or older was a qualified employee for the positions that he held.

35.     Plaintiff was subjected to adverse employment action in the form of differential treatment, denial of requests and benefits that were enjoyed by significantly younger employees at Union Pacific, was set up to fail by his supervisors, was threatened that his employment would be' terminated unless he left his home in Nebraska and moved to California even though no other younger employees were given this ultimatum, and he was the victim of fraudulent, hypocritical

9

and baseless criticism at the end of his career at Union Pacific when he was fifty-eight (58) and fifty-nine (59) years of age. This purposeful age discrimination as listed above also included being replaced in his Senior Counsel position by two substantially younger employees.

36.     The foregoing conduct by defendant Union Pacific and Does 1 through 100, inclusive, and each of their directors, officers and/or managing agents, constitutes malice, fraud and oppression and was authorized, ratified and carried on with a conscious disregard of their workers' right to work in an environment in which personal decisions discriminated against employees based upon their age, so it should justify the imposition of punitive damages to punish and set example of all defendants.

37.     As a proximal result of the foregoing conduct, which violated the provisions of government code section 12940, and 12941, et seq., Plaintiff has been forced to incur attorney's fees and costs in the prosecution of this claim, in an amount to be approved at trial.

38.     Wherefore, Plaintiff request relief as hereinafter provided.

## SECOND CAUSE OF ACTION

## FAILURE TO PREVENT AGE DISCRIMINATION AGAINST DEFENDANT

## UNION PACIFIC AND DOES 1 THROUGH 100

39.     As a second, separate, and distinct cause of action, plaintiff complains against defendant Union Pacific and Does 1 through 100, inclusive, and realleges all the allegations contained in the complaint and incorporates them by reference into this cause of action as though fully set forth herein.

40.     During the twenty-three (23) years that Plaintiff worked for Union Pacific, he was one of their most outstanding attorneys. He had trial successes, was an excellent manager of attorneys and staff in both the Salt Lake and Roseville offices and distinguished himself in many leadership roles during his tenure. However, prior to Plaintiff's departure from Union Pacific and during his work at Union Pacific in his later years, Plaintiff was subjected to age discrimination.

10

COMPLAINT FOR DAMAGES (AMOUNT DEMANDED EXCEEDS $25,000.00)

Although California law requires that employers prevent age discrimination, Union Pacific did not do so. In fact, other higher-level managers participated in the age discrimination against Plaintiff and others.

41.    Union Pacific knew, or should have known, that its employees were engaging in age discrimination against Plaintiff but failed to prevent it. In fact, Union Pacific engaged in a purposeful plan to make Plaintiff's work life so miserable and oppressive that he would quit his job at Union Pacific. Union Pacific ignored the age discrimination against Plaintiff as part of its scheme to harass and intimidate Plaintiff.

42.    Such failure by Union Pacific constituted unlawful employment discrimination and was a substantial factor in causing damage and injury to Plaintiff as set forth below.

43.    As a direct and proximate result of the affirmation acts and omissions of Union Pacific, Plaintiff has suffered and continues to suffer emotional distress, fear, worry, loss, diminished self-worth and general and compensatory damages, including but not limited to substantial losses to earnings, income, retirement, bonuses, medical and other benefits, which Plaintiff had a right to, and would have received in the future had Union Pacific not caused the above-described injury to Plaintiff's rights in person. Plaintiff's damages for those injuries which exceed the jurisdiction of the limits of this court and will be established according to proof at trial.

44.    As a direct and proximate result of the aforementioned acts and omissions of Union Pacific, Plaintiff will be caused to suffer and will continue to suffer in the future, humiliation, anxiety, severe emotional distress and worry, all to his special and general damage according to proof at the time of trial.

45.    The foregoing conduct engaged in by Union Pacific and Does 1 through 100, and each of their directors, officers and/or managing agents, constitutes malice, fraud and oppression and was carried on with a conscious and willful disregard of Plaintiff's rights,

COMPLAINT FOR DAMAGES (AMOUNT DEMANDED EXCEEDS $25,000.00)

including his right to work in an environment free of discrimination based on his age so as to entitle Plaintiff punitive damages to set an example of Union Pacific and those one through 100.

46. All actions of Union Pacific, its employees and agents as herein alleged, were authorized, ratified and approved by the officers or managing agents of Union Pacific and 1 through 100. Therefore, Plaintiff is entitled to punitive or exemplary damages against Union Pacific and Does 1 through 100 in an amount to be determined at the time of trial.

47. As a proximate result of the foregoing conduct, which violated provisions of government code sections 120940 and section 120941, et seq., Plaintiff has been forced to incur attorney's fees and costs in the prosecution of this action, in an amount to be determined through the trial and/or in after trial motions.

48. Wherefore, Plaintiff requests relief as herein provided.

## THIRD CAUSE OF ACTION

## RACE DISCRIMINATION AGAINST DEFENDANT UNION PACIFIC AND DOES 1

## THROUGH 100.

49. As a third, separate and distinct cause of action, Plaintiff complains against all defendants, including but not limited to do Union Pacific, and Does 1 through 100 inclusive, and realleges all the allegations contained in the complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

50. Union Pacific is a covered employer under of California's fair employment and housing act. Plaintiff was a covered employee under the race discrimination provisions of the fair employment and housing act being of Indian-American descent and was a qualified employee for the positions that he held.

51. Union Pacific and its employees engaged in fabrication of Plaintiff's work performance, a poor written review, threats to terminate Plaintiffs' position at Union Pacific even though other less or equally qualified employees of Caucasian descent were not at risk of their

12

COMPLAINT FOR DAMAGES (AMOUNT DEMANDED EXCEEDS $25,000.00)

position being terminated, and replacing Plaintiff's Senior Counsel position in Omaha after Plaintiff moved to California with not one but two Caucasian attorneys, and Plaintiff was not allowed the rights and privileges of other employees with regard to their location of work, benefits, privileges and treatment. During the twenty-three (23) years that Plaintiff was employed at Union Pacific, there was only one other Indian American attorney in the Law Department, and his employment lasted only a few months. The foregoing actions and decisions by Union Pacific were based upon his race as an Indian-American employee.

52.     At the Senior Counsel level, Plaintiff performed the duties of an executive while leading and managing the Salt Lake City law office and also while serving as a director of CAP. He performed those duties with success and distinction and had earned the right for promotion to an executive-level position at Union Pacific. However, Plaintiff was denied promotion to the executive level in favor of Caucasian employees who were less qualified. Upon information and belief, no Indian-American or even Asian-American has ever been promoted as an executive within Union Pacific's Law Department. Union Pacific's actions and decisions to deny promotion to Plaintiff were based upon his race as an Indian-American employee.

53.     These decisions and actions set forth herein were a substantial factor in damages to Plaintiff, including monetary damages, special damages and general damages.

54.     In doing the acts alleged herein, Union Pacific proceeded intentionally, oppressively and maliciously toward Plaintiff with advance knowledge, conscious disregard of the rights, or the consequence to Plaintiff, within the intent of depriving Plaintiff of property and legal rights and otherwise causing Plaintiff injury. Because the acts toward Plaintiff were carried out by managerial employees in a malicious, deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages pursuant to California Civil Code section 3294.

COMPLAINT FOR DAMAGES (AMOUNT DEMANDED EXCEEDS $25,000.00)

# FOURTH CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY AGAINST

## DEFENDANT UNION PACIFIC AND DOES 1 THROUGH 100

55.     As a fourth, separate and distinct cause of action, Plaintiff complaint against

Union Pacific and those one through 100, inclusive, and realleges all the allegations contained in

the complaint, and incorporate standby reference into this cause of action as though fully set forth

herein.

56.     Plaintiff was constructively discharged in violation of fundamental public policy

of the state of California with respect to just going against an employee on account of his age and

race.

57.     That set forth above, set actions by defendants Union Pacific and those one

through 100, inclusive, and each of them, were wrongful and in violation of the fundamental

principles of the public policy of the state of California as reflect its laws, objectives, and policies.

Such laws included but are not limited to California government code sections 120940 and 120994

these laws in your to the benefit of the public at large and not just private interest of the employers

and employees and they govern or protect.

58.     As a direct and proximate result of the aforementioned acts and omissions of

defendant Union Pacific, Plaintiff suffered general and compensatory damages, including but not

limited to loss of income, past and future, loss of employment benefits, past and future general and

compensatory damages, past and future it will continue to suffer in the future in the amount to be

approved at trial. Plaintiff by these actions was caused to suffer, and will continue to suffer in the

future humiliation, anxiety, severe emotional distress, worry, and fear.

59.     The foregoing conduct engaged in by defendant Union Pacific and those one

through 100, inclusive and each of their directors, officers and or managing agent, constitutes

malice, fraud and oppression and was authorized, ratified and carried out with a conscious and

willful disregard of the workers right to work in the environment in which personnel decisions were made in a manner detrimental to plaintiff and other employees older than 48, so as to justify the imposition of punitive damages to punish and set an example of Union pacific and Does 1 through 100.

60.     Wherefore Plaintiff request relief as hereinafter provided.

## PRAYER

Wherefore, plaintiff prays judgment against defendant Union Pacific, and each of them, as follows:

1.     For general and special damages according to proof;

2.     For loss of earnings and earning capacity, according to proof;

3.     For prejudgment interest to the extent allowed by law;

4.     For cost of suit incurred herein;

5.     For punitive and/or exemplary damages in an amount of to punish defendant;

6.     For attorney's fees in prosecuting this action; and

7.     For such other and further relief as the court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues as triable in the complaint.


Dated: May 3, 2022

CHARLES M. LOUDERBACK
Attorney for Plaintiff. JEFFERY J. DEVASHRAYEE

COMPLAINT FOR DAMAGES (AMOUNT DEMANDED EXCEEDS $25,000.00)